UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

E.R.R.,

Plaintiff,

v.

FRANK BISIGNANO,

Defendant.

Case No. 25-cv-04264-VKD

**ORDER RE SOCIAL SECURITY APPEAL**

Re: Dkt. Nos. 11, 12

Plaintiff E.R.R.[1] challenges a final decision of the Commissioner of Social Security ("Commissioner")[2] denying her application for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, *et seq*. E.R.R. contends that the administrative law judge ("ALJ") erred in finding her fibromyalgia was not a medically determinable impairment and erred in discounting her testimony regarding her symptoms. The Commissioner maintains that the ALJ's decision is free of legal error and supported by substantial evidence.

The parties have filed their respective briefs.[3] Dkt. Nos. 11, 12. The matter was submitted without oral argument. Civil L.R. 16-5. Upon consideration of the papers and the relevant

[1] Because orders of the Court are more widely available than other filings, and this order contains potentially sensitive medical information, this order refers to the plaintiff only by her initials. This order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

[2] Frank Bisignano, the Commissioner of the Social Security Administration, is substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

[3] E.R.R. did not file a reply.

United States District Court
Northern District of California

evidence of record, for the reasons set forth below, the Court affirms the ALJ's decision.[4]

## I. BACKGROUND

E.R.R. was 53 years old on July 19, 2022, the date she filed her application for disability insurance benefits. *See* AR[5] 60. The record indicates that E.R.R. completed tenth grade, and that she previously worked as a sales attendant and cleaner but has not worked since March 2019. *See* AR 36, 45-46.

On July 19, 2022, E.R.R. applied for disability insurance benefits, alleging disability beginning April 22, 2019 due to fibromyalgia, short-term memory loss, and stress. AR 51-52. Her application was denied initially and on review. AR 51-59, 61-73. On February 28, 2024, the ALJ held a hearing at which E.R.R. and a vocational expert testified. AR 31-50.

On May 24, 2024, the ALJ issued an unfavorable decision. AR 17-25. The ALJ found that E.R.R. met the Act's insured status requirements through June 30, 2020, her date last insured. AR 19. The ALJ found that E.R.R. has not engaged in substantial gainful activity since the alleged onset date. *Id*. The ALJ concluded that E.R.R. has the following severe medically determinable impairments: sprain/strain of spine and obesity. *Id.* The ALJ found that E.R.R.'s fibromyalgia was not a medically determinable impairment. AR 20. The ALJ concluded that E.R.R. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Commissioner's regulations.[6] *Id.*

The ALJ determined that E.R.R. has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b). AR 21. The ALJ found that E.R.R. has past relevant work as a "sales attendant" and a "cleaner, housekeeping." AR 23. In addition to the past relevant work, the ALJ found that based on E.R.R.'s age, education, work experience, and RFC,

[4] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 7, 9.

[5] "AR" refers to the certified administrative record filed with the Court. Dkt. No. 10.

[6] The ALJ also noted that E.R.R. reported "some transitory complaints," including a viral infection, difficulty opening her right eye, an intermittent right-sided headache, anxiety, brain fog, and plantar fasciitis. AR 20. The ALJ found that these conditions were not medically determinable impairments because they did not result in work-related limitations for a period of at least 12 months during the period at issue. *Id.* E.R.R. has not challenged this finding.



United States District Court
Northern District of California

E.R.R. could perform jobs that exist in significant numbers in the national economy, such as bagger; assembler of electrical accessories; stuffer; assembler, small products; and assembler, plastic hospital products. AR 24-25. Accordingly, the ALJ concluded that E.R.R. has not been disabled, within the meaning of the Act, from the alleged onset date of April 22, 2019 through the date last insured of June 30, 2020. AR 25.

The Appeals Council denied E.R.R.'s request for review of the ALJ's decision on March 19, 2025. AR 1-3. E.R.R. then filed the present action seeking judicial review of the decision denying her application for benefits.

## II. LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citation omitted); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citation omitted). In this context, the term "substantial evidence" means "more than a mere scintilla" but "less than a preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) and *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012), *superseded by regulation on other grounds*); *see also Morgan*, 169 F.3d at 599 (citation omitted). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Ahearn*, 988 F.3d at 1115 (citation omitted); *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Ahearn*, 988 F.3d at 1115-16 (citation omitted); *Morgan*, 169 F.3d at 599 (citation omitted).

## III. DISCUSSION

On appeal, E.R.R. challenges the ALJ's finding that her fibromyalgia was not a medically determinable impairment and the ALJ's evaluation of her testimony about her symptoms. Dkt.

No. 11 at 2-7.

### A. Fibromyalgia

E.R.R. argues that the ALJ "improperly dismissed" her fibromyalgia diagnosis. Dkt. No. 11 at 2-3. Specifically, E.R.R. contends the ALJ erred in finding that her fibromyalgia was not a medically determinable impairment because E.R.R. "was treated throughout the relevant period for pain and no other diagnosis was made to explain the pain she continued experiencing throughout her body." *Id.* at 2. The Commissioner responds that the ALJ reasonably determined that E.R.R.'s fibromyalgia was not a medically determinable impairment because E.R.R. did not meet the applicable diagnostic criteria for this impairment. Dkt. No. 12 at 1-4.

An impairment is medically determinable if it is "established by objective medical evidence from an acceptable medical source" with "objective medical evidence" meaning "signs, laboratory findings, or both." *Fowler v. Kijakazi*, No. 20-36016, 2021 WL 5823704, at *1 (9th Cir. Dec. 8, 2021) (citing 20 C.F.R. §§ 404.1502(f), 404.1521). In *Revels v. Berryhill*, the Ninth Circuit described the unique nature of fibromyalgia, as well as the approach ALJs should take in evaluating fibromyalgia claims:

> Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Benecke*, 379 F.3d at 589. Typical symptoms include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue." *Id.* at 590. What is unusual about the disease is that those suffering from it have "muscle strength, sensory functions, and reflexes [that] are normal." *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001) (Ferguson, J., dissenting) (quoting Muhammad B. Yunus, *Fibromyalgia Syndrome: Blueprint for a Reliable Diagnosis*, Consultant, June 1996, at 1260).
>
> "Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling." *Id.* (quoting *Yunus*, *supra*, at 1260). Indeed, "[t]here is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." *Id.* The condition is diagnosed "entirely on the basis of the patients' reports of pain and other symptoms." *Benecke*, 379 F.3d at 590. "[T]here are no laboratory tests to confirm the diagnosis." *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

874 F.3d 648, 656 (9th Cir. 2017). Noting that "[f]or a long time, fibromyalgia was poorly understood within much of the medical community," and that there was "reluctan[ce] to recognize fibromyalgia as an impairment that could render one disabled for Social Security purposes," the Ninth Circuit further explained that "[a] sea-change occurred in 2012," when the Social Security Administration issued Social Security Ruling ("SSR") 12-2P, which "recogniz[es] fibromyalgia as a valid 'basis for a finding of disability.'" *Id.* (quoting SSR 12-2P, 2012 WL 3104869, at *2 (July 25, 2012)). SSR 12-2P requires that fibromyalgia be diagnosed by a licensed physician who explains how the patient meets certain diagnostic criteria. SSR 12-2P, 2012 WL 3104869, at *2. As discussed in *Revels*, SSR 12-2P recognizes two methods for diagnosing fibromyalgia: the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia ("1990 Criteria") and the 2010 American College of Rheumatology Preliminary Diagnostic Criteria ("2010 Criteria"). *Id.* at 656-57 (citing SSR 12-2P, 2012 WL 3104869, at *2).

Under the 1990 Criteria:

> [A] person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain may fluctuate in intensity and may not always be present); (2) she has tenderness in at least eleven of eighteen specified points on her body; and (3) there is evidence that other disorders are not accounting for the pain.

*Id.* at 656-57 (internal quotations and citation omitted).

Under the 2010 Criteria:

> [A] person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain may fluctuate in intensity and may not always be present); (2) she has experienced repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and (3) there is evidence that other disorders are not accounting for the pain.

*Id.* at 657 (internal quotations and citation omitted). *Revels* further explained:

> Therefore, diagnosis of fibromyalgia does not rely on X-rays or MRIs. Further, SSR 12-2P recognizes that the symptoms of fibromyalgia "wax and wane," and that a person may have "bad days and good days." In light of this, the ruling warns that after a claimant has established a diagnosis of fibromyalgia, an analysis of her RFC should consider a longitudinal record whenever possible.

*Id.* (internal quotations and citations omitted).

The ALJ correctly noted that Dr. Robert Yee, M.D., diagnosed E.R.R. with fibromyalgia and lumbar strain in November 2019. AR 20, 22 (citing AR 459, 466). The ALJ observed that Dr. Yee's physical examination of E.R.R. at this visit showed normal findings and an absence of tenderness. AR 22 (citing AR 459, 460, 463, 466). The ALJ found that Dr. Yee's fibromyalgia diagnosis failed to satisfy the requirements set out in SSR 12-2P because that diagnosis included no explanation or findings showing that Dr. Yee had ruled out other possible causes for E.R.R.'s pain symptoms—a requirement of both the 1990 Criteria and the 2010 Criteria. AR 20. The ALJ further noted that "despite increased symptoms attributed to fibromyalgia reported long after the date last insured, [E.R.R.] had not followed up with rheumatology by late 2022." *Id.* (citing AR 860).

E.R.R. argues that the ALJ erred in determining that Dr. Yee's fibromyalgia diagnosis does not meet the applicable criteria because "no other diagnosis was made to explain the pain [E.R.R.] continued experiencing throughout her body" and "[i]t is likely for this reason that [Dr. Yee] noted that [E.R.R.] was diagnosed with fibromyalgia." Dkt. No. 11 at 2. The Commissioner criticizes this argument as speculative and argues that SSR 12-2P requires affirmative evidence that other disorders were ruled out, not the mere absence of any other diagnoses. Dkt. No. 12 at 2. E.R.R. did not reply to the Commissioner's argument.

The Court agrees with the Commissioner that substantial evidence supports the ALJ's finding that fibromyalgia was not a medically determinable impairment. E.R.R.'s argument as to the "reason" that Dr. Yee diagnosed her with fibromyalgia is speculative. While Dr. Yee noted in his November 2019 treatment record that E.R.R. reported "pain [in] both legs, lower back, neck, [and] left shoulder" as well as "occasion[al] calf cramping," AR 460, he also noted that the "quality" of the pain was "[a]chiness," with "[n]o specific location," *id.* Dr. Yee did not identify any other objective evidence to support a fibromyalgia diagnosis or reference any of the specific diagnostic criteria for that condition.[7] *See* AR 459-466. E.R.R. cites progress notes from three

[7] Dr. Yee did note that E.R.R. reported her sister had fibromyalgia. AR 461.

telehealth visits on September 8, 2020 (AR 535), February 21, 2022 (AR 613), and April 5, 2022 (AR 504), all after her date last insured of June 30, 2020, that she says support her fibromyalgia diagnosis. Dkt. No. 11 at 3. But E.R.R. "has not shown that any provider documented [at] least 11 positive tender points out of a possible 18 tender point sites (1990 Criteria), recorded widespread pain in all four quadrants of the body and axial skeletal pain for at least 3 months (1990 Criteria, 2010 Criteria), or excluded other disorders that could cause the symptoms or signs (1990 Criteria, 2010 Criteria)." *See Yvonne M. v. Kijakazi*, No. 21-cv-05550-TSH, 2022 WL 3702103, at *5 (N.D. Cal. Aug. 26, 2022) (affirming ALJ's finding that fibromyalgia was not a medically determinable impairment where "no physician made findings sufficient to satisfy either set of criteria"); *see also Walters v. Kijakazi*, No. 20-35861, 2022 WL 1046208, at *1 (9th Cir. Apr. 7, 2022) (affirming ALJ's finding that fibromyalgia was not a medically determinable impairment because plaintiff "did not provide objective medical evidence of his symptoms or their severity, and a 'physician's diagnosis alone' cannot establish a medically determinable impairment").

Even assuming that the records that E.R.R. relies upon could satisfy the required showing of widespread pain and repeated manifestations of fibromyalgia signs, E.R.R. has not satisfied the third requirement under both the 1990 Criteria and the 2010 Criteria that a physician "rule out other possible causes of a claimant's pain." *See Ford v. Saul*, 950 F.3d 1141, 1155 n.7 (9th Cir. 2020) (affirming the ALJ's finding that a diagnosis of fibromyalgia was insufficient where the physician failed to document the bases for such diagnoses, such as ruling out other causes). The ALJ correctly observed that Dr. Yee did not indicate that other disorders that could have caused E.R.R.'s symptoms, such as lumbar strain, were excluded. *See id.* ("[B]ecause both the 1990 and 2010 criteria require a physician to rule out other possible causes of a claimant's pain, . . . the ALJ's determination that Dr. Medani failed to do so establishes that Dr. Medani's fibromyalgia diagnosis does not meet either criterion."); *Martin v. Saul*, No. 20-cv-07754-HSG, 2022 WL 7094258, at *6 (N.D. Cal. Oct. 12, 2022) (affirming ALJ's finding that fibromyalgia was not a medically determinable impairment where there was no evidence that a physician ruled out other possible cause of plaintiff's pain and "much of the evidence supports the conclusion that

Plaintiff's pain was attributable to degenerative changes of her spine"). In fact, Dr. Yee's November 2019 treatment record specifically notes that E.R.R. suffered an injury at work while "bending down cleaning"; Dr. Yee did not exclude this injury as a cause of E.R.R.'s symptoms. AR 460. E.R.R. has not identified any diagnosis of fibromyalgia provided by any other medical provider that meets the SSR 12-2P requirements.

Even if the Court were to find that the ALJ erred, any such error would be harmless. After finding that fibromyalgia was not a medically determinable impairment, the ALJ proceeded with the sequential disability analysis and stated that he considered all of E.R.R.'s reported symptoms, including her pain symptoms, "under the banner of her severe impairments." *See* AR 20; *see, e.g.*, *Martin*, 2022 WL 7094258, at *4 (finding harmless error where the "ALJ explicitly stated that she incorporated [p]laintiff's symptoms 'from whatever etiology' and 'regardless of precise etiology' into the RFC evaluation and in limiting [p]laintiff to less than a full range of work"); *Yvonne M.*, 2022 WL 3702103, at *6 (finding harmless error where ALJ considered fibromyalgia limitations in the RFC despite concluding it was not medically determinable).

Accordingly, substantial evidence supports the ALJ's conclusion that fibromyalgia was not a medically determinable impairment.

**B. E.R.R.'s Testimony**

E.R.R. argues that the ALJ erred in evaluating her testimony regarding her symptoms because the ALJ failed to articulate clear and convincing reasons for discounting her testimony. Dkt. No. 11 at 3-7. Specifically, E.R.R. contends that (1) the ALJ erred in relying on Dr. Yee's physical examination findings because fibromyalgia symptoms are not necessarily apparent through physical examinations; (2) the ALJ inaccurately described Dr. Yee's November 2019 treatment note; and (3) the ALJ erred in relying on E.R.R.'s statements to her medical provider in June 2020 as a reason to discount her testimony. *Id.* The Commissioner responds that the ALJ reasonably discounted E.R.R.'s testimony because her testimony was inconsistent with objective medical findings, minimal treatment, and E.R.R.'s statements to medical providers in 2020. Dkt. No. 12 at 4-6. E.R.R. did not reply to the Commissioner's arguments.

An ALJ is not "required to believe every allegation of disabling pain" or other non-

exertional impairment. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1106 (9th Cir. 2014) (citation modified). In assessing a claimant's subjective testimony, an ALJ conducts a two-step analysis. First, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996)). If the claimant does so, and there is no affirmative evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms "only by offering specific, clear and convincing reasons for doing so." *Id*. (quoting *Smolen*, 80 F.3d at 1281); *see also Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) ("We therefore review the ALJ's discrediting of Claimant's testimony for specific, clear, and convincing reasons."). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (citation modified). Although lack of medical evidence cannot form the sole basis for discounting a claimant's subjective testimony, it is a factor that the ALJ can consider in his credibility analysis. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The administrative hearing occurred on February 28, 2024, more than three and one-half years after E.R.R.'s date last insured. At the hearing, E.R.R. testified that she stopped working in March 2019 because of her physical symptoms, including back pain and difficulty breathing. AR 36-38. She testified that she currently spends most of her day in a resting position and that she is unable to sit or lay down for a long time because she is in constant pain. AR 41. E.R.R. testified that when she stands up, she experiences a burning sensation in her feet. *Id.* E.R.R. testified that her son helps her get out of bed. AR 43. E.R.R. stated that she struggles with chores, including sweeping, washing dishes, taking out the trash, cooking, and doing laundry, and that her son and neighbor assist her with chores. AR 41-42, 44. E.R.R. testified that she either gets her groceries delivered or she gets her groceries herself. AR 44. She stated that she drives her son to school and waits in the parking lot until her son ends school. AR 39-40. E.R.R. also testified that she

takes medication for depression, although she currently takes only half of the prescribed dose because she wants to remain focused. AR 42-43.

The ALJ found that while E.R.R.'s medically determinable impairments could reasonably be expected to cause her alleged symptoms, E.R.R.'s statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. AR 21. As the ALJ did not identify any affirmative evidence of malingering, he was required to provide specific, clear, and convincing reasons for this determination. The ALJ's decision meets this standard.

The ALJ found that while E.R.R.'s testimony regarding her cessation of work in March 2019 was generally consistent with the record, her statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with evidence from the relevant time frame between the alleged onset date and the date last insured. *See* AR 22-23. Specifically, the ALJ stated that in November 2019, E.R.R.'s examination results were "entirely unremarkable." AR 22. The ALJ noted that on physical examination, E.R.R.'s "bilateral shoulders, upper arms, elbows, thighs, and knees appeared normal with no tenderness." *Id.* (citing AR 463). The ALJ further observed that the physical examination showed normal findings and no tenderness for E.R.R.'s cervical spine, thoracic spine, and lumbosacral spine. *Id.* The ALJ also noted that a November 2019 X-ray of E.R.R.'s lumbar spine was normal. *Id.* (citing AR 467-468). The ALJ noted that after November 2019, there is "very little indication of treatment until mid-2020 when the claimant presented to establish care." *Id.* (citing AR 542). The ALJ acknowledged that a "lack of insurance coverage did play a role in the claimant's ability to seek treatment from 2017 until mid-2020."[8] *Id.* The ALJ stated that by the time E.R.R. sought treatment again in June 2020, she reported that she "[o]verall feels healthy" and was not taking any medications. AR 22-23 (citing AR 542). The ALJ concluded that the record is inconsistent with E.R.R.'s testimony about the very debilitating nature of her symptoms, including that she rests much of the day and struggles significantly with daily chores. AR 23. E.R.R.'s testimony at the February 28, 2024 hearing

---

[8] E.R.R. does not challenge the ALJ's findings regarding her minimal treatment during the relevant time frame.

generally focused on her symptoms at the time of the hearing, more than three and one-half years after E.R.R.'s date last insured. The ALJ reasonably relied on records from the relevant time frame in considering whether E.R.R.'s testimony about her current symptoms supports a finding of disability between April 2019 and June 2020. *See McIntosh v. Berryhill*, No. 17-cv-1654 AGR, 2018 WL 3218105, at *5 (C.D. Cal. June 29, 2018) (affirming ALJ's evaluation of plaintiff's statements as inconsistent with the objective medical evidence where plaintiff's hearing testimony occurred "almost one and half years after the date last insured, and his testimony generally focused on that time frame"); *Arreguin v. Astrue*, No. 1:08-cv-00744-SMS, 2009 WL 1516237, at *8 (E.D. Cal. May 29, 2009) ("[I]t was reasonable for the ALJ to conclude that [p]laintiff's testimony about her condition some four years after the date last insured did not suffice to support a more restrictive RFC on the date last insured.").

E.R.R. argues that the ALJ's reliance on Dr. Yee's physical examination findings is misplaced because E.R.R. alleges limitations caused by fibromyalgia, which is not inconsistent with Dr. Yee's "normal" findings. Dkt. No. 11 at 6-7. While E.R.R. is correct, the record reflects that Dr. Yee identified no functional limitations during his examination of E.R.R. in November 2019, and, as explained above, his diagnosis of fibromyalgia did not meet the applicable diagnostic requirements. In fact, Dr. Yee recommended that E.R.R. return to full-time work and activity. *See* AR 459, 461. Thus, the ALJ did not err in relying on Dr. Yee's overall findings, and the absence of any functional limitations, as reasons to discount E.R.R.'s testimony. *See* SSR 96-8P, 1996 WL 374184, at *1 (July 2, 1996) ("The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments[.]"); *see also Lane v. Colvin*, No. 15-cv-905-RSL-JPD, 2016 WL 424608, at *5 (W.D. Wash. Jan. 12, 2016) (holding the ALJ's citation to objective physical findings supported adverse credibility determination because "the ALJ did not err in finding that fibromyalgia was not a medically determinable impairment, and thus did not err in failing to account for limitations caused by fibromyalgia"), *report and recommendation adopted*, No. 15-cv-905-RSL, 2016 WL 410126 (W.D. Wash. Feb. 3, 2016); *McConnell v. Kijakazi*, No. 3:20-cv-285-SMD, 2022 WL 672151, at *7 (M.D. Ala. Mar. 7, 2022) ("[T]o the extent [claimant] is arguing

that the ALJ improperly relied on objective evidence to discount her testimony about her fibromyalgia symptoms, that argument fails because fibromyalgia was no longer part of the analysis after step 2," at which the ALJ properly found that fibromyalgia was not a medically determinable impairment).

E.R.R. also argues the ALJ erred in evaluating her testimony because her testimony is consistent with Dr. Yee's November 2019 treatment record stating, "[E.R.R.] was experiencing pain in both legs, neck and left shoulder." Dkt. No. 11 at 6 (citing AR 460). However, this treatment record describes the "quality" of E.R.R.'s pain as "[a]chiness" and does not include any indication that her pain at that time was as severe and debilitating as what E.R.R. described in her testimony. *See* AR 460. In addition, to the extent E.R.R. relies on treatment notes and statements by treating chiropractor Dr. Ronald R. Desmarais, D.C., as being consistent with her testimony, *see* Dkt. No. 11 at 6, the ALJ discounted Dr. Desmarais's medical opinion as inconsistent with the record as a whole, AR 23. The ALJ observed that while Dr. Desmarais had assessed functional limitations that were supported by contemporaneous findings, his recommendations "were meant to be temporary in nature." *Id.* Indeed, Dr. Desmarais's work absence notes indicate only short-term restrictions. *See, e.g.*, AR 392 (recommending work absence of one week); AR 396-398 (recommending work absence of approximately six weeks); AR 678 (recommending work absence of two weeks). E.R.R. has not challenged the ALJ's evaluation of medical opinions.

Finally, E.R.R. argues that the ALJ erred by relying on a June 2020 progress note in which E.R.R. stated that she was feeling healthy because that visit was simply to re-establish care and the ALJ ignored subsequent progress notes which "noted [E.R.R.'s] treatment for her ANA positive results and fibromyalgia pain." Dkt. No. 11 at 7. E.R.R. does not explain the significance of "ANA positive results," and for the reasons discussed above, the ALJ did not err in concluding that E.R.R. did not establish a diagnosis of fibromyalgia. Moreover, contrary to E.R.R.'s assertion, the ALJ did not rely on only "one medical record" in discounting her testimony. *See* Dkt. No. 11 at 7. The ALJ also cited Dr. Yee's physical examination findings and E.R.R.'s minimal treatment as reasons to discount E.R.R.'s testimony. AR 22.

Viewing the record as a whole, the Court finds that the ALJ provided sufficient specific,

clear, and convincing reasons for discounting E.R.R.'s testimony regarding the intensity, persistence, and limiting effects of her impairments during the period between April 2019 and June 2020.

***

In sum, the Court concludes that substantial evidence supports the ALJ's finding that E.R.R.'s fibromyalgia was not a medically determinable impairment and the ALJ's evaluation of E.R.R.'s symptom testimony.

## IV. CONCLUSION

Based on the foregoing, the Court affirms the ALJ's decision. The Clerk shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: September 1, 2026

Virginia K. DeMarchi
United States Magistrate Judge